AMERICAN EXPRESS CO. *v.* UNITED STATES

**No. 6287.**—Invoices dated La Guaira, Venezuela, May 14, 1941.
Certified May 14, 1941.
Entered at New York, N. Y., May 22, 1941.
Entry No. 764057, etc.

(Decided on rehearing [Reap. Dec. 6037] June 24, 1946)

*Eugene R. Pickrell* (*Eugene R. Pickrell* and *Lawrence A. Harper* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Arthur R. Martoccia* and *Daniel I. Auster,* special attorneys), for the defendant.

EKWALL, Judge: These appeals for reappraisement are before me on rehearing having been originally decided and reported in Reap. Dec. 6037. They involve the dutiable value of orchid plants known botanically as *Cattleya Mossiae,* grown in Venezuela and exported from that country during May 1941.

The exporter in reappraisement No. 142836–A is H. J. Rapella, La Guaira, Venezuela, and the orchids were shipped to the same name in New York for account of the same. Five hundred plants were entered by the American Express Co. at a value of $0.15 each, which plaintiff contends is the foreign value as defined in section 402 (c) of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938.

In reappraisement No. 143185–A exportation was made in the name of H. J. Rapella, La Guaira, Venezuela, shipment was made to the American Express Co., who entered the goods, and the ult'mate consignee is given as the Pittsburgh Cut Flower Co. Entry was made of

500 plants at a unit value of $0.15 each. Attached to the entry papers in this case is a form of certificate sent by the United States appraiser of merchandise at the port of New York to the American Express Co., in which it is stated that the total number of units of currency remitted in full payment for the merchandise is $738.

Appraisement was made at $1.92 per plant, net packed, apparently on the basis of export value under section 402 (d) of the Tariff Act of 1930.

Upon the record as originally made it was found that the importer had failed to sustain his burden of proof; that there was no evidence as to the location of the principal market, nor the usual wholesale quantities of such or similar merchandise, and the appeal was therefore dismissed.

On rehearing Mr. H. J. Rapella again testified on behalf of the plaintiff. He stated that the markets in which these orchid plants are sold are Buena Vista, Cubiro, Quibor, and Barquisimeto, and that the last-mentioned town is the central point through which the plants are sent to the coastal ports, Caracas, La Guaira, and Puerto Cabello for export. From the testimony of this witness it is apparent that the prices vary in the different markets. While he testified that the largest number of sales was made in Buena Vista, it developed on cross-examination that he had never bought or sold in that town, had never been there, and that his statements as to that were based on hearsay. However, he did visit Caracas and while there visited the places of business of firms that were selling orchids of the same type as those covered by these appeals to reappraisement. He also visited several nurseries in that city but they did not have what he wanted.

His testimony was positive that the orchid plants here involved were of inferior quality to those offered for export to the United States and other countries and that there is no export market for these inferior plants in Venezuela.

As opposed to this testimony, the Government produced as a witness the examiner who passed upon the importations. He stated that he saw about 10 other importations of orchid plants in 1941, the year in which these were exported, but it does not appear what the country of exportation of those plants was. It was the opinion of the examiner at the time of importation that these plants were of average quality and he advised the importer prior to examination that he would probably advisorily appraise them at 50 or 60 cents a plant. His appraisement, however, after an investigation had been made, was at the rate of $1.92 a plant, net packed. This was not based solely upon examination of the plants but upon offers of sale that the importer made to a person in the United States. It developed upon rehearing that the importer had offered to the Pittsburgh Cut Flower Co., the

ultimate consignee in reappraisement No. 143185–A, plants of number one quality but that upon his arrival in Venezuela he informed the Pittsburgh company that he could not fill their order. Thereafter, the importer divided his own collection and offered half of it to the Pittsburgh concern for its inspection and approval. After an inspection of the plants submitted to it, the Pittsburgh firm agreed to accept these plants and paid the price originally agreed upon for first-grade merchandise, viz, $2 per plant.

From the testimony of the importer it is plain that the usual wholesale quantity is one case of 10-bulb leaves or 40 plants to a case.

On the question of the principal market, the importer testified that the greatest number of sales was made in Buena Vista. However, he admitted that he did not buy or sell plants in Buena Vista and had never been there. He testified that the second largest number of sales had taken place in Caracas, where similar plants were sold by collectors to anyone who wanted to buy at from 20 to 40 cents a plant and that there was no market for export for this grade of plants. I am, therefore, of the opinion that so far as the evidence shows, Caracas is the principal market for these plants. Although the importer testified that the price at Caracas was 3 cents per bulb leaf, or 30 cents a plant, plus packing and transportation from the interior, in view of his testimony that similar plants were sold at that place by collectors to anyone who wanted to buy at from 20 to 40 cents a plant, I find the proper value to be 40 cents per plant, which value represents foreign value.

The examiner's advisory value, which was adopted by the appraiser, was based in part upon an offer of these plants made by this importer to a concern in the United States. In view of the statement of the importer that the only offer he made of this merchandise was made to the Pittsburgh Cut Flower Co., under the circumstances above set forth, I am of the opinion that such offer and sale did not represent export value as that value is defined in section 402 (d), *supra*. This view is supported by the holding in an early case reported in Reap. Cir. 34711, affirmed in Reap. Cir. 34903. There, the dutiable value of certain hats imported from Java was involved and the Government in an effort to rebut plaintiff's testimony submitted evidence of purchases of like hats in Batavia by purchasers who bought outright. Each of these purchases was at a c. i. f. or c. and f. price New York, and included also the overhead or operating cost in each case of the representative of the foreign seller in New York. The court, speaking through General Appraiser McClelland, held that the price in Java represented the dutiable value and in so holding used the following language:

I do not think there is any warrant in figuring back from a laid-down price in New York to ascertain the cost or market value of such hats in Java when

there is unquestionably an open market in which such hats are freely offered for sale to all comers at prices easily ascertainable as indicated by the cases under consideration.   *   *   *

Even were it to be considered that the sale to the Pittsburgh Cut Flower Co. involved in reappraisement No. 143185–A was made in Venezuela, such sale was an isolated one and did not represent a freely offered price at which all purchasers could buy for export to the United States.

The evidence is not of such a nature as to eliminate doubt on the question of the value of these orchids.   However, it is my opinion and I so hold, that the value found by the appraiser, based as it is partly upon the offer and sale to the Pittsburgh Cut Flower Co., is not borne out by the evidence.   The importer, who had been an orchid dealer 11 years prior to his visit to Venezuela to purchase this merchandise, spent considerable time investigating market conditions in the sale of orchids there.   His testimony, based upon his experience, is entitled to considerable weight, as is also his belief that the orchids here involved were of inferior quality and grade.   Upon consideration of the additional evidence produced, I find that the merchandise consists of orchid plants which are inferior in grade to those sold in Venezuela for export to the United States; that there is no export value for this grade of orchid plants; that the proper basis of valuation is foreign value as defined in section 402 (c) of the Tariff Act of 1930; that such value is 40 cents per plant packed, in the principal market, which I find to be Caracas.

Judgment will be rendered accordingly.